2015 VT 65

## In re Appeal of MDY Taxes, Inc. and Village Car Wash, Inc.

[123 A.3d 1184]

No. 14-140

Present: **Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.**

Opinion Filed April 17, 2015

*Karl C. Anderson* of *Anderson & Eaton, P.C.,* Rutland, for Appellants.

*R. Jeffrey Behm* and *Diane M. McCarthy* of *Sheehey Furlong & Behm P.C.,* Burlington, for Appellee Jolley Associates, LLC.

*Benjamin W. Putnam* of *Neuse, Duprey & Putnam, P.C.,* Middlebury, for Appellee Town of Middlebury.

¶ 1. **Eaton, J.** This appeal stems from a decision by the Town of Middlebury Development Review Board (DRB) approving ap-

pellee Jolley Associates, LLC's (Jolley) application for a Planned Unit Development (PUD) to add a car wash to an existing gas station and convenience store within the Town of Middlebury. Appellant MDY Taxes, Inc. (MDY) operates an H&R Block tax franchise in property rented in a shopping center adjacent to the Jolley lot. Appellant Village Car Wash, Inc. (Village) operates a car wash located approximately one-quarter of a mile from the Jolley lot.[1] Appellants did not participate in the DRB proceeding, but sought to challenge the approval of the PUD through an appeal to the Environmental Division of the Superior Court. The environmental court dismissed the appeal for lack of jurisdiction. The court concluded that appellants did not have party status, i.e., standing, to appeal the DRB decision because they had not participated in the proceedings before the DRB as required by 10 V.S.A. § 8504(b)(1) and because they did not meet any of the exceptions to that requirement under § 8504(b)(2). On appeal, appellants contend, as they did below, that a procedural defect prevented them from appearing before the DRB and further that it would be manifestly unjust if they are not afforded party status to appeal. We affirm.

¶ 2. The basic facts are as follows. Jolley owns and operates a convenience store with fuel pumps located within the Town of Middlebury Village Residential Commercial (VRC) District. Jolley currently operates a diesel refueling station for tractor trailers underneath a canopy behind the store. In September 2013, Jolley filed a zoning permit application with the Town of Middlebury to remove the diesel refueling station and its canopy and instead erect a two-bay drive-through car wash. On September 26, 2013, the DRB published a notice of public hearing in the Addison Independent newspaper as follows:

TOWN OF MIDDLEBURY
PUBLIC HEARING NOTICE

The Middlebury Development Review Board will hold a public hearing on Monday, October 14, 2013 beginning at 7:00 p.m. in the Town Offices Main Conference Room to consider:

. . . .

---

[1] We refer to appellants MDY and Village collectively as "appellants" except where it is useful to differentiate between the two.

2. The application by Jolley Associates, Inc. to construct a car wash at 220 Court Street.

Plans and additional information regarding these applications may be viewed at the Planning and Zoning Office in the Town Offices or by [phone]. Participation in this public hearing is a prerequisite to the right to take any subsequent appeal.

The DRB also posted a notice of the hearing on a stake on Jolley's property within view of Court Street; mailed written notification of the hearing to Jolley and all adjoining property owners; and posted copies of the notice on a bulletin board in the Middlebury Town Offices and on the Middlebury Town website.

¶ 3. On October 14, 2013, the DRB held a public hearing during which it heard Jolley's application. The minutes from that meeting reflect that Jolley provided an overview of the proposed project, explaining that the diesel pumps and canopy at the back of the store would be removed to make way for the car wash; diesel fuel would still be available at other pump sites for vehicles other than tractor trailers; no parking spaces would be eliminated; garbage and storage facilities would be relocated within the property; and the car wash would operate the same hours as the convenience store. Thereafter, the zoning administrative officer for the Town of Middlebury explained that, although car washes are not allowable uses in the VRC district, a PUD may be allowable in the VRC district under Middlebury Zoning and Subdivision Regulation § 550[2] if certain criteria are met. The DRB voted unanimously to proceed with the Jolley zoning permit application as a PUD application and, upon reviewing the requisite criteria, unanimously approved the PUD application to remove the canopy and diesel pumps and construct a car wash. Neither MDY nor Village attended the hearing; only Jolley and the zoning administrative officer addressed the DRB regarding Jolley's application. The DRB issued its formal written decision approving Jolley's car wash application on November 25, 2013.

¶ 4. Following the October 14 hearing, but prior to the issuance of the November 25 written decision, counsel for Village wrote to

---

[2] Section 550(II) provides, in relevant part, that "[a]ny development involving three or more acres, or any site located in the [Central Business District] or VRC [district], may qualify for consideration as a Planned Unit Development."

the zoning administrative officer and set forth Village's opposition to treating Jolley's zoning permit application as a PUD application. The zoning administrative officer responded, explaining that the DRB had held a public hearing to consider Jolley's application on October 14 and had unanimously approved it, closing the review process and triggering the forty-five day time period in which to issue a final written decision. The zoning administrative officer also pointed out that only Jolley and the Town of Middlebury had appeared before the DRB on the application.

¶ 5. On December 26, 2013, appellants filed a notice of appeal to the environmental court and subsequently moved for party status, notwithstanding their failure to appear before the DRB, pursuant to Vermont Rule for Environmental Court Proceedings 5(d)(2) and 10 V.S.A. § 8504(b)(2)(A) and (C). Under § 8504(b)(2), an "interested person" who did not participate at the municipal regulatory proceeding may be allowed to appeal a decision of a municipal panel if the environmental court determines that either a procedural defect prevented that person from participating, § 8504(b)(2) (A), or if the court concludes that some other condition exists that would result in manifest injustice if the person's right to appeal was disallowed, § 8504(b)(2)(C). Both Jolley and the Town of Middlebury opposed appellants' motion and moved to dismiss the appeal. The environmental court denied appellants' motion for party status, concluding that there had been no procedural defect so as to prevent appellants from participating in the October 14, 2013 public hearing and that appellants had failed to demonstrate that it would be manifestly unjust to prevent them from proceeding with their appeal. Because the court concluded that neither appellant had standing, the court concluded it was without jurisdiction to hear the appeal and dismissed the case.[3] This appeal followed.

¶ 6. The crux of this appeal is whether the Environmental Division correctly concluded that appellants should not be afforded party status under 10 V.S.A. § 8504(b)(2)(A) and (C). Put another way, this case is about whether MDY or Village have standing to appeal the decision of the DRB approving Jolley's car wash application as a PUD, notwithstanding their failure to participate

---

[3] Because the environmental court concluded that appellants' lack of participation in the DRB proceeding was not excused under either 10 V.S.A. § 8504(b)(2)(A) or (C), the court did not address whether appellants qualified as "interested persons" as defined by 24 V.S.A. § 4465.

in the underlying DRB proceeding. Appellants claim that (1) a procedural defect in the DRB's public hearing notice prevented them from participating in the proceeding before the DRB and (2) manifest injustice would occur if their appeal was disallowed.

¶ 7. ■ Under Vermont law, an "interested person . . . who has participated . . . in the municipal regulatory proceeding . . . may appeal to the Environmental Division an act or decision made . . . by . . . a development review board." 10 V.S.A. § 8504(b)(1). Thus, participation in the municipal regulatory proceeding below is ordinarily required in order to have standing to appeal. As set forth above, notwithstanding the participation requirement, an interested person who did not participate in the municipal regulatory proceeding may nevertheless appeal a decision from a municipal regulatory proceeding "if the environmental judge determines that: (A) there was a procedural defect which prevented the person from . . . participating in the proceeding; . . . or (C) some other condition exists which would result in manifest injustice if the person's right to appeal was disallowed." *Id.* § 8504(b)(2); see also *In re Verizon Wireless Barton Permit*, 2010 VT 62, ¶ 16, 188 Vt. 262, 6 A.3d 713. "[D]etermination of party status under [10 V.S.A. § 8504(b)(2)] is discretionary, not automatic, and this discretion is vested in the trial court." *Id.* ¶ 19. The burden of establishing party status is on the appellant. *Id.* (citing Reporter's Notes, V.R.E.C.P. 5). Accordingly, the question on appeal here is whether the environmental court abused its discretion in concluding that appellants did not meet their burden. *Id.*; see also *State v. Savo*, 141 Vt. 203, 208, 446 A.2d 786, 789 (1982) (explaining that discretionary rulings will be upheld "if there is a reasonable basis for the court's action" and that error will be found only where the court either failed to exercise its discretion or "exercised it for reasons clearly untenable or to an extent clearly unreasonable."

¶ 8. We first address appellants' argument that there were procedural defects with the notice of hearing such that it prevented them from participating at the DRB hearing on October 14, 2013. Appellants argue that Jolley's application and the DRB's notice of hearing "failed to provide any notice to appellants or any other prospective parties that Jolley would be able to avoid the prohibition against car washes in this zoning district by characterizing the project as a 'planned unit development' and to proceed as such without any further hearing or evidence." Appellants

concede that the DRB complied with the statutory requirements for providing notice and also that they did not see the notice prior to the hearing. Nevertheless, appellants assert that even if they had seen the notice, "they would have been well within their rights to believe that an application for a zoning permit for a non-permitted use, without more, would be futile and that no appearance by them would be necessary to defeat an application which was void ab initio." We disagree.

¶ 9. Pursuant to statute, "[a]ll development review applications before an appropriate municipal panel . . . shall require notice." 24 V.S.A. § 4464(a). Under Middlebury Zoning and Subdivision Regulation § 1090, all DRB hearing notices shall be given as provided in 24 V.S.A. § 4464(a)(1). Section 4464(a)(1) requires that all public notices be given not less than fifteen days prior to the date of the hearing, and include the following information:

> (A) Publication of the date, place, and purpose of the hearing in a newspaper of general circulation in the municipality affected.

> (B) Posting of the same information in three or more public places within the municipality . . . , including posting within view from the public right-of-way most nearly adjacent to the property for which an application is made.

> (C) Written notification to the applicant and to owners of all properties adjoining the property subject to development, including the owners of properties which would be contiguous to the property subject to development but for the interposition of a highway or other public right-of-way . . . . The notification shall include a description of the proposed project and shall be accompanied by information that clearly informs the recipient where additional information may be obtained, and that participation in the local proceeding is a prerequisite to the right to take any subsequent appeal.

¶ 10. The environmental court found that all the notice requirements of Middlebury Zoning and Subdivision Regulation § 1090 and 24 V.S.A. § 4464(a)(1) were met regarding Jolley's application. Specifically, the court found that the DRB, on or before September 29, 2013, published a notice in the Addison Independent

newspaper on September 26, 2013; posted a notice on Jolley's property within view of Court Street; mailed written notifications to Jolley and all adjoining property owners; and posted notice at the town offices and on the town website. Accordingly, the court concluded that the DRB had "complied with the most stringent content requirements provided by statute" and thus appellants "had statutory notice and an obligation to participate in order to take any appeal, regardless of what they considered to be the potential merit of Jolley's application." The court further reasoned that the way the DRB had elected to proceed with Jolley's application at the hearing did not constitute a procedural defect with the notice such that appellants were prevented from participating, explaining that "[t]o hold otherwise would result in the waiving of the participation requirement for those who choose not to participate but later disagree with the DRB's hearing process, findings, or conclusions."

¶ 11. ■ ■ As the environmental court found, and appellants concede, the DRB complied with the regulatory and statutory framework for providing both constructive and actual notice for the October 14, 2013 hearing as required by 24 V.S.A. § 4464(a)(1). See *In re Great Waters of Am., Inc.*, 140 Vt. 105, 107, 435 A.2d 956, 958 (1981) (distinguishing actual versus constructive notice). Appellants do not contest the validity of these facts. Thus, regardless of whether appellants had received actual notice, appellants were on constructive notice of the October 14, 2013 hearing. There is no requirement that all interested persons receive actual notice of a hearing. See 24 V.S.A. § 4464(a)(1)(C) (requiring that written notification, i.e., actual notice, of hearing be provided only "to the applicant and to owners of all properties adjoining the property subject to development"). The purpose of constructive notice is "to notify all interested persons of what action is proposed and to afford them reasonable opportunity to present facts and arguments, either in support or protest of the action proposed." See *Town of Mendon v. Ezzo*, 129 Vt. 351, 357-58, 278 A.2d 726, 730 (1971).

¶ 12. ■ Further, there is no merit to appellants' argument that, assuming they had seen the notice, the notice failed to apprise them or others of the potential success of the application. As a practical matter, the statutory framework does not mandate a weather report on the likelihood of success on the merits of any

given application. Simply put, relying on one's subjective view regarding the likelihood of success of any given application is not a justification for failing to attend the municipal regulatory proceeding in situations where proper statutory notice has been provided. To this end, we agree with the environmental court that to excuse the participation requirement where an interested person felt the application had little to no chance of success would effectively eviscerate the participation requirement and impermissibly expand the class of persons entitled to seek review of municipal proceedings in the environmental court. See *In re Verizon*, 2010 VT 62, ¶ 7 (explaining that the Legislature has chosen to regulate by statute those who may seek review of municipal proceedings and that this Court "may not judicially expand the class of persons entitled to such review" (quotation omitted)). The decision by the DRB to treat Jolley's application as a PUD and approve it as such goes to the merits of the application and not to the decision by appellants on whether to participate. The court did not abuse its discretion in denying appellants party status under 10 V.S.A. § 8504(b)(2)(A).

¶ 13. Appellants also argue that to deny them the ability to appeal in this case would be manifestly unjust. Appellants contend that the DRB, by converting Jolley's application at the October 14, 2013 hearing from one for a zoning permit to one for a PUD, without notice that it would do so, "failed to adequately apprise . . . appellants that a non-permitted use had any possibility of being allowed."

¶ 14. The environmental court concluded that there would be no manifest injustice for reasons similar to those addressed above. Specifically, the DRB provided the statutorily required forms of notice, which stated that participation at the DRB proceeding was a prerequisite to any appeal to the environmental court, and that, regardless of the format Jolley's application ultimately took at the October 14 hearing, the notice stated that Jolley sought to construct a car wash. The court did not abuse its discretion.

¶ 15. ■ As appellants note, this Court has not yet had the opportunity to address what might constitute "manifest injustice" under 10 V.S.A. § 8504(b)(2)(C). When we have addressed the "manifest injustice" standard in other contexts we have recognized that it is an exacting and strict standard. See, e.g., *State v. Dove*, 163 Vt. 429, 431, 658 A.2d 936, 938 (1995) (explaining that motion

to withdraw plea under Vermont Rule of Criminal Procedure 32(d) made prior to sentencing is to be liberally granted where the reason is "fair and just" but that where such a motion is made after sentencing, it may only be set aside to correct manifest injustice, "a much stricter standard" (quotations omitted)); see also *N. Sec. Ins. Co. v. Mitec Elecs., Ltd.*, 2008 VT 96, ¶¶ 40-46, 184 Vt. 303, 965 A.2d 447 (finding no manifest injustice under Vermont Rule of Civil Procedure 59(e) sufficient to alter or amend final judgment where party seeking relief could have but did not timely raise claim prior to entry of judgment). We need not provide a precise definition of manifest injustice here, however, because it is sufficient for our purposes to recognize that, whatever the bounds of "manifest injustice" may be, in this case MDY and Village have failed to demonstrate that any injustice, let alone *manifest* injustice, would result from denying them the right to appeal the decision of the DRB to approve Jolley's application as a PUD.

¶ 16. ▮ As described above, the Legislature and the Town of Middlebury have determined those who are entitled to actual notice in zoning matters and those who are entitled only to constructive notice. MDY is a tenant of an abutter; Village is a business similar to the one proposed in Jolley's application and located a significant distance from Jolley's property. Neither is among those entitled to receive actual notice. See 24 V.S.A. § 4464(a)(1)(C). Constructive notice is thus mandated to be provided to a broader class of persons, i.e., those who may be interested in applications but who may not be entitled to receive actual notice. See *Town of Mendon*, 129 Vt. at 357-58, 278 A.2d at 730; see also *Great Waters*, 140 Vt. at 107, 435 A.2d at 958. Both MDY and Village fall within this latter category — that is, they are persons entitled to receive constructive, but not actual notice. In such a situation, the obligation to read the notice and the decision about participation rests solely with those intended to be notified by the statutorily mandated notice. See *Great Waters*, 140 Vt. at 110, 435 A.2d at 959 (concluding that where proper constructive notice had been provided as required by statute, there was no error in denying adjoining landowner party status where landowner did not comply with procedural requirements for obtaining party status in timely manner). It is clear that the constructive notice provided in this case adhered to the require-

ments of the law and that it expressly stated that Jolley was seeking to construct a car wash on its property.

¶ 17. To the extent it is asserted that the notice did not "adequately apprise" appellants that the DRB might convert Jolley's zoning permit application to a PUD application, there is no error. This situation precisely illustrates why, regardless of one's view of the merits of any given' zoning application, participation at the municipal level is of the utmost importance, and further underscores why the Legislature has mandated the extensive notice requirements contained in 24 V.S.A. § 4464. Again, that neither appellant actually viewed or scrutinized the notices provided pursuant to those statutory requirements does not make it manifestly unjust to deny them the ability to appeal where the notice was given as required by law and apprised them of the substance of application.[4] No showing has been made of any reason why the appellants here are in a dissimilar situation from any other citizen who either did not read the provided notices or read them and elected not to attend. Indeed, it is difficult to perceive how additional disclosures in the notice could have made any difference in this situation when appellants concede that they did not read the notice that had been provided. The environmental court did not abuse its discretion in denying appellants' motion for party status under § 8504(b)(2)(C).

*Affirmed.*

---

[4] Because we conclude that neither 10 V.S.A. § 8504(b)(2)(A) nor (C) applies to appellants, we need not reach the issue of whether either appellant could be considered an "interested person" as defined in 24 V.S.A. § 4465.